**NEW HAMPSHIRE BUSINESS DEVELOPMENT CORP.,**
Plaintiff, Appellee,

v.

**F.R. LEPAGE BAKERY, INC.,**
Defendant, Appellant.

No. 86–2079.

United States Court of Appeals,
First Circuit.

Heard June 2, 1987.
Decided Nov. 2, 1987.

Gerald S. Cope with whom Cope and Cope, Portland, Me., was on brief, for defendant, appellant.

Russell F. Hilliard with whom Upton, Sanders & Smith, Concord, N.H., was on brief, for plaintiff, appellee.

Before BREYER and TORRUELLA, Circuit Judges, and RE,* Judge.

RE, Chief Judge:

F.R. Lepage, Inc. (Lepage) appeals from an order of the United States District Court for the District of New Hampshire, which entered judgment for New Hampshire Business Development Corporation (NHBDC) in the amount of $30,566.43, together with interest and costs.

Lepage contends that the district court erred in holding that it was obligated to account to NHBDC for sums which Lepage had collected from Cross Baking Company (Cross), a debtor of both Lepage and NHBDC.

Since this court finds all contentions and issues raised by Lepage to be without merit, the judgment of the district court is affirmed.

## THE FACTS

This case involves security interests held by Lepage and NHBDC in accounts receivable of Cross. NHBDC is a private corporation organized to stimulate the economy in New Hampshire. In the Spring of 1979, NHBDC loaned Cross $100,000. On May 23, 1979, NHBDC and Cross signed a security agreement, whereby NHBDC obtained a first security interest in the accounts receivable of Cross to the extent of $50,000. The appropriate Uniform Commercial Code filings were made on May 25, 1979.

Lepage, a corporation organized under Maine law, was also a creditor of Cross. On April 27, 1979, Lepage and Cross signed a "management agreement" pursuant to which Cross agreed to purchase from Lepage raw materials and supplies, as well as certain management services. The agreement specifically recognized the potential security interest of NHBDC in the accounts receivable of Cross. Contemporaneous with the management agreement, the two companies signed a security agreement in which Lepage acquired a security interest in the accounts receivable of Cross. On

June 5, 1979, this interest was perfected by the appropriate Uniform Commercial Code filings.

Subsequent to the signing of these security agreements, Cross defaulted as to both NHBDC and Lepage, and Lepage notified all of Cross's debtors to remit payment directly to Lepage. NHBDC notified Lepage that it was wrongfully interfering with NHBDC's security interest. Thereafter, on September 12, 1979, Lepage entered into a "factoring agreement" with Cross, pursuant to which an account was established under the name and control of Lepage to handle Cross's daily receipts and invoices. Although NHBDC was not a party to this agreement, Lepage explicitly recognized NHBDC's security position. On September 21, 1979 Lepage withdrew the call of accounts receivable. NHBDC requested from Lepage an accounting as to the amount collected by Lepage from Cross's accounts. On November 8, 1979, NHBDC sent a letter demanding that Lepage pay it $15,000 of Cross's accounts receivable.

From February 13, 1980 through July 25, 1980, a number of letters were sent by NHBDC, and several phone calls were made, each attempting to attain an accounting from Lepage of the collected accounts receivable. In one letter, Lepage's attorney recognized NHBDC's first security interest, and recommended that the accounting be delivered. Lepage's vice president stated in his deposition that Lepage had the duty, if not intent, to set aside the first $50,000 collected for NHBDC. Lepage, however, ignored all requests for an accounting.

On August 21, 1980, NHBDC instituted this suit in the United States District Court for the District of New Hampshire under the court's diversity jurisdiction. Pursuant to a pretrial court order, Lepage provided an accounting to NHBDC.

In addition to the sums directly collected from the accounts receivable, Lepage also had withdrawn funds from the factoring account, into which other accounts receiva-

* Chief Judge of the United States Court of International Trade, sitting by designation.

ble of Cross had been deposited. These withdrawals amounted to approximately $12,000 bringing the total accounts receivable collected by Lepage to $30,566.43.

Meanwhile, in June of 1980, Cross had filed a Chapter 11 proceeding in the United States Bankruptcy Court. NHBDC filed a claim against the Cross Bankrupt Estate as a secured creditor, but was denied relief in the bankruptcy proceeding. *See New Hampshire Business Development Corp. v. Cross Baking Co.*, 818 F.2d 1027 (1st Cir.1987) (affirming order of bankruptcy court).

In NHBDC's diversity action against Lepage, however, the district court, applying New Hampshire law, held that Lepage was obligated to account to NHBDC, and found no evidence that NHBDC acquiesced in the factoring agreement between Lepage and Cross. *New Hampshire Business Development Corp. v. F.R. LePage Bakery, Inc.*, No. C–80–421–L (D.N.H. Sept. 3, 1986).

The question presented is whether the district court erred in holding that Lepage was obligated to account to NHBDC for the accounts receivable up to $50,000, the amount of NHBDC's secured interest. Lepage also asserts that the district court erred in: (1) holding that NHBDC did not acquiesce in the so-called "factoring agreement" between Lepage and Cross; (2) not distinguishing between collected accounts receivable due to Lepage's call to collect, and the rights of a secured creditor to accounts receivable in the ordinary course of business; (3) not finding that NHBDC had adequate protection in its first security position, and was thus estopped from demanding payment of the collected sums; (4) not concluding that NHBDC waived its right to accountability from Lepage by failing to preserve adequately its position in the accounts receivable; and (5) not holding that Lepage's actions did not harm NHBDC in any way, and thus NHBDC was not due any recovery from Lepage.

The court holds that Lepage was obliged to account to NHBDC for the first $50,000 in the accounts receivable which it collected. The court also affirms the district court's finding that NHBDC did not acquiesce to any lesser position as to the accounts receivable. Thus, the district court's judgment for NHBDC in the amount of $30,566.43 is affirmed.

## DISCUSSION

It is not disputed that NHBDC has a superior, first position in the accounts receivable of Cross to that of Lepage. The perfected status of both interests is also not in dispute. Additionally, it is not disputed that, had Lepage collected *all* the accounts receivable of Cross, that NHBDC would be entitled to $50,000 from Lepage.

The question presented is whether a junior creditor who collects a portion of the accounts receivable, must account to the senior creditor. Although a review of prior case law has not revealed a determination directly on point, there are basic principles that justify the recovery of NHBDC.

Lepage contends that, even though its position was subordinate to that of NHBDC, because no agreement defining the respective rights of the parties existed, Lepage may collect the accounts receivable while NHBDC remains unsatisfied. Lepage also asserts that because it stopped its collection at the insistence of NHBDC, that the parties were returned to *status quo*.

The court finds these contentions to be without merit. The rights of the secured parties in the collateral after a debtor's default are the essence of a security transaction. U.C.C. § 9–501 comment (1982). It is the relationship between a senior secured creditor and a junior secured creditor that defines their obligations. N.H.Rev.Stat. Ann. §§ 382–A:9–312, 9–504 (Supp.1986). Although not extensive, the case law indicates that it is the obligation of the junior creditor to account for and pay over to the senior creditor the sums collected. *See Cummings Bank Co. v. Turner*, 198 N.E.2d 477, 478 (Ohio App.1963); *Roemer & Zeller, Inc. v. Ace Transmission Center, Inc.*, 114 Misc.2d 415, 417, 454 N.Y.S.2d 377, 378 (Sup.Ct.1982) (dictum).

Lepage collected over $18,000 with the knowledge that NHBDC had a first priority interest up to $50,000. NHBDC repeatedly requested an accounting from Lepage, and demanded that Lepage turn over the money received to NHBDC. Lepage neither provided the requested information and payment nor responded to NHBDC's communications.

The evidence adduced at trial indicated that Lepage was not only aware of NHBDC's superior secured position, but also acknowledged NHBDC's right to the first $50,000 and an accounting of the money collected. Lepage has presented no argument or evidence to support findings contrary to those of the district court. In Lepage's view, it could retain any funds collected as long as they amounted to less than $50,000. This contention is inconsistent with the priority of interests in secured transactions as set forth in the pertinent statutes. *See* N.H.Rev.Stat.Ann. §§ 382–A:9–312, 9–504 (Supp.1986).

Additionally, Lepage's claim that, since it ceased its direct collection from Cross's accounts, the parties were restored to *status quo* is contrary to both law and logic. Prior to the collection, neither party had received funds from any of the accounts receivable. After the collection, Lepage had $18,000 of Cross's accounts receivable. Lepage acknowledged that NHBDC had first priority to the $18,000, but NHBDC still had nothing. Clearly, there was no return to *status quo.*

The relationship of the parties and the circumstances of the case also give rise to the remedial device of a constructive trust. The junior creditor (Lepage) holds the right to payment from the common debtor (Cross) as a constructive trustee for the senior creditor (NHBDC) after the default of the common debtor. *See* Heileson & Hirsch, *Private Subordination Agreements and the U.C.C.: Is Section 1–209 an Un–Wyse Solution?* 38 *Bus.Law* 555, 562 (1983). The constructive trust "is the formula through which the conscience of equity finds expression," and is established by law because of the actions of the parties and their relationship with each other. *See*

*Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919); *see also In re Dodge–Freedman Poultry Co.,* 148 F.Supp. 647, 651 (D.N.H.1956), *aff'd sub nom. Dodge–Freedman Poultry Co. v. Delaware Mills, Inc.,* 244 F.2d 314 (1st Cir.1957). Here, the subordination of the rights of Lepage to those of NHBDC may be seen in Lepage's acknowledgment of its junior position and NHBDC's right to the first $50,000 of Cross's accounts receivable. Lepage's collection of any amount of money up to $50,000, therefore, is deemed to be held in trust for NHBDC.

Furthermore, whether the money was collected directly by Lepage through the call for accounts, or acquired indirectly through the factoring account is not relevant in this case. Both sums represent Cross's accounts receivable, in possession of Lepage, in which NHBDC had a superior interest. NHBDC is entitled to its security interest in both sums up to $50,000. Hence, the district court was correct in not distinguishing between these funds for the purpose of determining a duty to account and turn over the monies to NHBDC.

Lepage contends that NHBDC acquiesced in Lepage's factoring agreement with Cross. Lepage's only support for this assertion is based on the testimony of NHBDC's manager, which, at best, establishes that NHBDC was aware of the factoring agreement discussions and of its general contents. The facts, however, show that NHBDC not only did not acquiesce to the agreement, but continued to demand an accounting from Lepage and payment of $15,000. Lepage's argument, therefore, is without merit, and the district court properly found that there was no evidence of acquiescence.

Lepage also asserts that, because the levels of remaining accounts receivable were over $50,000, NHBDC had adequate protection for its interest, and, therefore, is estopped from collecting the money from Lepage. This view, however, is contrary to the very essence of a first priority secured creditor. Lepage acknowledged NHBDC's priority right in the first $50,000, yet it

**12**

contends that as long as ample collateral is available, the junior creditor, Lepage, may retain all that it has collected. This is not only completely contrary to the theory of a first secured creditor but is also inconsistent with the basic equitable maxim that even between equal equities, the first in time is the first in right. Hence, Lepage's contention is without merit.

■ Finally, Lepage contends that NHBDC has waived its claim against Lepage because it "failed to preserve its adequately secured position on accounts receivable accruing after the bankruptcy filing of Cross." Shortly after Cross filed for bankruptcy, however, NHBDC sent Lepage two letters advising it of its claim, requesting information and an accounting, and demanding payment for the earlier collections. Surely, the sending of these letters cannot be said to constitute a waiver on the part of NHBDC. Lepage was clearly on notice that NHBDC was insisting on enforcing its claim. Lepage, which bears the burden of proof on this issue, has presented little or no evidence to support its claim. Indeed, the facts and evidence presented establish the contrary. Hence, this argument is also without merit.

### CONCLUSION

In view of the foregoing, the court holds that: (1) Lepage was obligated to account to NHBDC for the accounts receivable which it collected; (2) Lepage was under a duty to turn over the collected monies and those withdrawn from the factoring account to NHBDC; (3) NHBDC neither acquiesced nor waived its rights with respect to the Cross accounts receivable, and (4) all other contentions of Lepage have been considered and are found to be without merit.

The judgment of the district court is, therefore, *affirmed*.