UNITED STATES of America, Plaintiff–Appellee,

v.

Francisco Javier MUNOZ–ROMO, Defendant–Appellant.

No. 89–2345.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1991.

Rehearing Denied Dec. 3, 1991.

---

Marc D. Murr, Bracewell & Patterson, Houston, Tex. (Court-appointed), for defendant-appellant.

Jeffery A. Babcock, Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before DAVIS and BARKSDALE, Circuit Judges, and MENTZ, District Judge.[1]

BARKSDALE, Circuit Judge.

Double jeopardy is the principal issue in this appeal. Review of several issues is limited by the failure to raise them in the district court. Although Francisco Javier Munoz–Romo does not appeal his convictions on two counts of cocaine distribution, he does challenge them on several counts of illegal firearms possession and money laundering. He also contends that he was improperly sentenced twice for one of the firearms offenses. We AFFIRM the convictions, and, with respect to the sentence, AFFIRM IN PART and VACATE IN PART.

I.

Since late 1987, Munoz–Romo had been the subject of a ongoing drug trafficking investigation by several federal and state agencies. A government informant, wearing a wireless microphone transmitter monitored by the Victoria, Texas, police, purchased a total of 14 grams of cocaine from Munoz–Romo on August 30 and 31, 1988.

On September 14, 1988, search warrants were issued for property owned or rented by Munoz–Romo in Victoria. The first locale searched was a house he rented on East Warren Street. Munoz–Romo and his wife were present during the search. Law enforcement officers discovered an RG revolver hidden in a maroon suitcase in the bathroom. Approximately $59,000 in cash was found throughout the house.[2] A set of scales and a bottle of lactose were also seized.

The second location searched was an apartment registered to Munoz–Romo on Sherwood Avenue. An Excam revolver was discovered between the mattress and box springs of the bed in the bedroom. Two empty bottles of lactose were found; and, other items of drug paraphernalia were seized, including a Triple Beam Balance scale, a small mirror, a razor blade, a soda straw, and a "coke spoon". Officers also discovered a plastic cooler, containing jewelry and several thousand dollars, buried in the ground behind the apartment. Law enforcement officials also searched a house Munoz–Romo owned on North

---

1. District Judge of the Eastern District of Louisiana sitting by designation.

2. The agents found $11,400, $9,030 and $30,020 hidden in the rafters of the utility room ceiling, $4,827 hidden under a mattress in the master bedroom, $1,510 in the pocket of a pair of pants on the bedroom floor, and $2,074 in the top dresser drawer in the bedroom.

Wheeler Street, seizing various tax records of Munoz–Romo and his wife.

In early October 1988, Munoz–Romo was charged in a two-count indictment for distribution of the cocaine sold on August 30 (count 1) and 31 (count 2), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Later that October, an 11-count superseding indictment was filed against him. In addition to the two distribution charges, he was charged with (1) being a felon in possession of the Excam revolver (count 3) and the RG revolver (count 5), in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1)(B), as well as being an illegal alien in possession of the revolvers (counts 4 and 6), in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(1)(B); (2) being in possession of the RG revolver while having previously been convicted of three drug offenses, each punishable by a term of imprisonment exceeding ten years, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (count 7); and (3) money laundering in the purchase of the North Wheeler Street residence (count 8), a Dodge truck (count 9), and Nissan (count 10) and Chevrolet (count 11) automobiles, in violation of 18 U.S.C. § 1956(a)(1)(A).

A jury trial was conducted in December 1988. At the close of the government's case, Munoz–Romo moved for a judgment of acquittal on all counts. The government agreed that it had not met its burden of proof on count 11 (money laundering in the purchase of the Chevrolet). The motion was granted on that count, but denied as to the remainder. However, after presentation of all evidence, including Munoz–Romo testifying, he did not renew the acquittal motion. The jury returned a verdict of guilty on the remaining ten counts.

A sentencing hearing was held in February 1989. Munoz–Romo was sentenced to 240 months' imprisonment on each of counts 1, 2, 8, 9, and 10 (cocaine distribution and money laundering) (the first set), with the sentences to run concurrently with each other. He was sentenced to 22 months' imprisonment on each of counts 3, 4, 5, and 6 (firearms possession), with the sentences to run concurrently with each other, and to run concurrently with the sentences on the first set. He was further sentenced to 180 months on count 7 (firearms (RG revolver) possession enhancement), with the sentence to run concurrently with all other sentences, resulting in a total imprisonment of 240 months. He also received supervised release terms of five years each on counts 1, 2, 8, 9, and 10, and three years each on counts 3, 4, 5, 6, and 7, with all terms to run concurrently. Finally, he was ordered to pay a $50 special assessment on each of the ten counts, for a total of $500. He made no objections at the sentencing hearing, nor were any objections to the presentence investigation report (PSI) filed. Munoz–Romo timely appealed.[3]

## II.

As noted, Munoz–Romo does not appeal his convictions or sentences (concurrent terms of 240 months) on the two counts of cocaine distribution. He contends that (1) his convictions concerning each of the two revolvers for the single act of possession of each firearm as both a convicted felon and an illegal alien subjected him to double jeopardy, (2) there was insufficient evidence to support his convictions for the firearms and money laundering offenses, (3) he received ineffective assistance of

---

**3.** The notice of appeal was filed in March 1989; however, this court dismissed the appeal that June, due to his failure to order the transcript. Later that June, Munoz–Romo filed a motion in this court for reinstatement of his appeal. He then filed motions in the district court to proceed in forma pauperis, for appointment of counsel on appeal, and for the court to supply a transcript at government expense. And, in August 1989, he filed a motion in the district court under 28 U.S.C. § 2255, contending that, because his trial counsel declined to represent him

on appeal, he had been denied effective assistance of counsel on appeal. In January 1991, the magistrate judge granted the motions to proceed in forma pauperis and for a court supplied transcript, referred the request for court appointed counsel on appeal to this court, and stayed the § 2255 motion pending disposition of the direct appeal to this court. In February 1991, this court reinstated the appeal, and, in March, granted the motion for appointment of appellate counsel.

counsel at trial, (4) comments by the trial judge to him and his counsel substantially prejudiced his right to a fair trial, and (5) he was erroneously sentenced twice for possession of the RG revolver as a felon under 18 U.S.C. §§ 922(g)(1) and 924(e).

### A.

Among other things, the Double Jeopardy Clause of the Fifth Amendment " 'protects ... against multiple punishments for the same offense.' " *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). Munoz–Romo was convicted of two violations each of 18 U.S.C. §§ 922(g)(1) and 922(g)(5), which provide:

It shall be unlawful for any person—

(1) who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year; [or]

\* \* \* \* \* \*

(5) who, being an alien, is illegally or unlawfully in the United States;

\* \* \* \* \* \*

to ... possess in or affecting commerce, any firearm. . . .

Munoz–Romo contends that these two provisions proscribe the same offense—possession of a firearm. Therefore, he maintains that, because he was convicted of possession of each firearm as both a convicted felon and an illegal alien, he was improperly subjected to multiple punishments for a single offense as to each revolver.

Although his contentions are generally framed as a double jeopardy challenge, Munoz–Romo is essentially contending that counts 3 and 4 (possession as felon and illegal alien of Excam revolver), and 5 and 6 (possession as felon and illegal alien of RG revolver), are multiplicious. " 'Multiplicity' is charging a single offense in more than one count in an indictment. Accordingly, it 'addresses double jeopardy; and where the jury is allowed to return convictions on multiplicious counts, the remedy is to remand for resentencing, with the

government dismissing the count(s) that created the multiplicity.' " *United States v. Lemons*, 941 F.2d 309, 317 (5th Cir.1991) (quoting *United States v. Moody*, 923 F.2d 341, 347 (5th Cir.1991)). " 'The chief danger raised by a multiplicious indictment is the possibility that the defendant will receive more than one sentence for a single offense.' " *Lemons*, 941 F.2d at 317 (quoting *United States v. Swaim*, 757 F.2d 1530, 1537 (5th Cir.), *cert. denied*, 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985)).

■ Munoz–Romo did not raise the double jeopardy (or multiplicity) issue in the district court. "Multiplicity of an indictment must be raised as a defense pursuant to Fed.R.Crim.P. 12(b) to be preserved for appeal." *United States v. Stovall*, 825 F.2d 817, 821 (5th Cir.1987) (citing *United States v. Gerald*, 624 F.2d 1291, 1300 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981)). "Failure to object to an indictment on grounds of multiplicity prior to trial constitutes a waiver of that objection." *Lemons*, 941 F.2d at 316 n. 4. *Accord United States v. Marroquin*, 885 F.2d 1240, 1245 (5th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1807, 108 L.Ed.2d 938 (1990). This failure precludes Munoz–Romo from challenging his firearms convictions as multiplicious.

■ Despite this waiver, "[a] complaint about multiplicity of sentences ... can be raised for the first time on appeal." *Stovall*, 825 F.2d at 821. But, if the sentences are to be served concurrently, a defendant is still precluded from asserting a multiplicity claim not raised prior to trial. *Marroquin*, 885 F.2d at 1245. However, if monetary assessments under 18 U.S.C. § 3013 are imposed on separate counts of conviction, the sentences on those counts are not concurrent, and the concurrent sentence doctrine does not apply. *Ray v. United States*, 481 U.S. 736, 736–37, 107 S.Ct. 2093, 2093–94, 95 L.Ed.2d 693 (1987); *Marroquin*, 885 F.2d at 1245. As noted, the district court imposed a $50 assessment against Munoz–Romo on each count of conviction. Accordingly, Munoz–Romo has not waived his right to challenge on appeal the alleged multiplicity of these sentences.

In *United States v. York*, 888 F.2d 1050, 1058 (5th Cir.1989), this court stated that, "[i]n order to determine whether Congress intended to authorize multiple punishments under violations of two different statutes for the same criminal act, 'our starting point must be the language of the statutes. Absent a 'clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' ' " (quoting *Albernaz*, 450 U.S. at 336, 101 S.Ct. at 1141). In applying this rule, the *York* court then stated:

> The Supreme Court has directed us to apply the *Blockburger* rule of statutory construction to the language:
>
>> In *Whalen* [*v. United States*, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980) ], the Court explained that the 'rule of statutory construction' stated in *Blockburger* [*v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),] is to be used 'to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively.' The Court then referenced the following test set forth in *Blockburger*:
>>
>>> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, *is whether each provision requires proof of a fact which the other does not.*

888 F.2d at 1058 (quoting *Albernaz*, 450 U.S. at 337, 101 S.Ct. at 1141 (citing *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182)) (citations omitted) (emphasis added). Next, and as had the Supreme Court, the *York* court cautioned again that the *Blockburger* test does not control in the face of clearly expressed contrary legislative intent. *Id.*

We are not dealing with two statutes. Two provisions (indeed, subparts of a subsection) in the same statute are in issue. This, of course, does not affect our review. *E.g., United States v. Nation*, 832 F.2d 71, 73 (5th Cir.1987) (upholding multiple punishments under different subsections of 18 U.S.C. § 922); *United States v. Luis-Gonzalez*, 719 F.2d 1539, 1546–47, 1548 (11th Cir.1983) (upholding multiple convictions and punishments for separate violations of four subsections of 21 U.S.C. § 955a). In applying the above described analysis from *York*, we note, first, that the plain wording of § 922(g) permits the multiple punishments in issue. There is no indication in the statute that only one conviction is permitted under it, even if the same weapon is in issue on separate charges under each of its seven subparts.[4] Second, our review of the legislative history reveals no express legislative intent that § 922(g) does not permit multiple punishments for the same possession, nor are we cited to any. Third, as discussed below, the *Blockburger* rule permits the punishments imposed. As stated in *Stovall*, "[i]f both offenses require proof of a fact not necessarily required by the other then *Blockburger* is satisfied and sentences under each statutory provision may be constitutionally imposed even though there is a substantial overlap in the proof offered to establish the crimes." 825 F.2d at 822.

In *United States v. Nation*, this court addressed an argument similar to that raised by Munoz–Romo. Nation was convicted twice for a single act with the same

---

4. Section 922(g) provides:

    It shall be unlawful for any person—
    (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
    (2) who is a fugitive from justice;
    (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));
    (4) who has been adjudicated as a mental defective or who has been committed to a mental institution;
    (5) who, being an alien, is illegally or unlawfully in the United States;
    (6) who has been discharged from the Armed Forces under dishonorable conditions; or
    (7) who, having been a citizen of the United States, has renounced his citizenship;
    to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

firearm: shipping and transporting a firearm by a convicted felon, in violation of § 922(g)(1), and shipping and transporting a stolen firearm, in violation of 18 U.S.C. § 922(i). 832 F.2d at 72. Noting that the *Blockburger* standard controlled Nation's contentions, the *Nation* court undertook to determine "whether each violation requires proving a fact that the other does not." *Id.* (citing *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). The court stated:

> In analyzing Nation's convictions, we find that different elements of proof are required for each conviction. Under section 922(g)(1), the government must prove not only that Nation transported the firearm between states, but also that Nation was a *felon.* Under section 922(i), however, the government must prove that Nation transported the firearm while *knowing* it was stolen. Thus, these multiple convictions involve proving distinctly different elements and, under the *Blockburger* test, cumulative sentences would certainly seem allowable.

832 F.2d at 73 (emphasis in original).[5]

Similarly, under § 922(g)(1), the government must prove not only that Munoz–Romo was in possession of a firearm, but also that he was a felon. And, under § 922(g)(5), in addition to the element of possession, the government must prove that he was an alien residing in the United States illegally. "[E]ach provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. The sentences are not multiplicious.

### B.

Munoz–Romo contends that there is insufficient evidence to support his convictions on the firearms and money laundering offenses. He maintains, therefore, that the district court erred in not granting his motion for a judgment of acquittal. However, although he moved for a judgment of acquittal after the government rested its case, he failed to renew his motion at the close of the proof, following the presentation of his case, including his testimony, and the government's rebuttal witnesses. "This failure waived any objection to the denial of his motion." *United States v. Ruiz*, 860 F.2d 615, 617 (5th Cir. 1988).

*Nation*, however, distinguished these cases, finding that, in each, "proof of one offense constituted proof of the other." 832 F.2d at 74. In other words, "proof that the felon received a firearm was tantamount to proving that the felon possessed the firearm"; similarly, "proof that a defendant possessed a firearm with an obliterated serial number was proof in fact that the defendant possessed an unregistered firearm since a serial number was required for registration." *Id.* With respect to the facts before it, however, the *Nation* court found that "proving that the gun transported in interstate commerce was stolen does not prove that it was transported in interstate commerce by a felon; proof of additional facts and a different element are required." *Id.* Under *Blockburger*, therefore, the court found that its holding did not conflict with the previous holdings discussed above. *Id.*

As in *Nation*, proof that Munoz–Romo possessed the firearms as a convicted felon is not proof that he possessed them as an illegal alien. "[P]roof of additional facts and a different element [is] required." 832 F.2d at 74. The facts presented in this appeal, therefore, are controlled by our holding in *Nation*, rather than in *McDaniel, Rollins,* or *Thomas*.

---

**5.** The *Nation* court noted that previous decisions of this court had precluded cumulative sentences for a "single act" under the firearm statutes. 832 F.2d at 74. For example, in *United States v. McDaniel*, 550 F.2d 214, 219 (5th Cir. 1977), it held that cumulative sentences could not be imposed for violation of statutory provisions prohibiting possession of an unregistered firearm and possession of a firearm with an obliterated or unidentified serial number because "possession of a firearm with an obliterated [unidentified] serial number necessarily entails possession of an unregistered firearm...." *Cf. Rollins v. United States*, 543 F.2d 574 (5th Cir.1976) (same). Additionally, in *United States v. Hodges*, 628 F.2d 350, 352 (5th Cir.1980), it held that cumulative sentences could not be imposed for statutes proscribing *receipt* of a firearm by a felon and *possession* of a firearm by a felon because receipt of a firearm was tantamount to possession. *See also Ball v. United States*, 470 U.S. 856, 862, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985) ("proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession") (emphasis in original); *United States v. Thomas*, 810 F.2d 478, 479 (5th Cir.), *cert. denied*, 482 U.S. 930, 107 S.Ct. 3218, 96 L.Ed.2d 704 (1987) (following *Ball*).

"Consequently, this [c]ourt's review is not under the usual standard of review for claims of insufficiency of evidence but rather under a much stricter standard." *Id.* "We are limited to the determination of 'whether there was a manifest miscarriage of justice.' Such a miscarriage would exist only if the record is 'devoid of evidence pointing to guilt,' or ... 'because the evidence on a key element of the offense was so tenuous that a conviction would be shocking.'" *Id.* (quoting *United States v. Ivory*, 468 F.2d 613, 614 (5th Cir.1972) and *United States v. Bullock*, 551 F.2d 1377, 1385 (5th Cir.1977)). "In making this determination, the evidence, as with the regular standard for review for insufficiency of evidence claims, must be considered 'in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices.'" *Ruiz*, 860 F.2d at 617 (quoting *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir.1988)). *Accord United States v. Shaw*, 920 F.2d 1225, 1230 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991).

### 1.

■ Munoz–Romo contends that there was insufficient evidence to prove that he knowingly possessed the RG and Excam revolvers found at the East Warren Street residence and the Sherwood Avenue apartment respectively. "Possession may be either actual or constructive." *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir.1991). In *Smith*, which also involved illegal possession of firearms, we stated that "'[c]onstructive possession' has been defined as ownership, dominion, or control over the contraband itself, *or* dominion or control over the premises in which the contraband is concealed." *Id.* (emphasis in original). "The 'proof that possession of contraband is knowing will usually depend on inference and circumstantial evidence.'" *United States v. Romero–Reyna*, 867 F.2d 834, 836 (5th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990) (quoting *United States v. Richardson*, 848 F.2d 509, 514 (5th Cir.1988)).

The evidence established that Munoz–Romo was renting the Warren Street residence, and was present when the search warrant was executed there. Moreover, he testified that he was living in the house at the time. A special agent with the IRS's Criminal Investigation Division testified that, four days before execution of the warrant, he observed Munoz–Romo entering the Warren Street residence carrying a suitcase that was maroon in color and similar in appearance to the one in which the RG revolver was later discovered. Further, the revolver was found in the bathroom—a location that "[o]ne could reasonably infer ... [was] conveniently accessible to [Munoz–Romo]." *Smith*, 930 F.2d at 1086.

Regarding the Sherwood Avenue apartment, Mary Miller, the apartment manager, testified that Munoz–Romo had rented the apartment from her, and that she never saw anyone else at the apartment. Miller further testified that, two days before execution of the search warrant, Munoz–Romo had paid his monthly rent in advance. Munoz–Romo admitted that he did so, and, further, acknowledged that he had been the one to secret the money and jewelry in the cooler buried behind the apartment. And, the Excam revolver was found between the box spring and mattress of the bed, a location easily accessible to Munoz–Romo.

In short, the record is far from being "'devoid of evidence pointing to guilt.'" *Ruiz*, 860 F.2d at 617 (citation omitted). Munoz–Romo clearly exercised dominion and control over both the Warren Street residence and the Sherwood Avenue apartment. The jury could, therefore, reasonably infer that he had constructive possession of the firearms discovered in both locations. Needless to say, there has not been a "'manifest miscarriage of justice'" on this issue. *Id.* (citations omitted).

### 2.

■ Pursuant to 18 U.S.C. § 1956, Munoz–Romo was convicted of three counts of money laundering, in connection with the purchases of the North Wheeler Street res-

idence, a Dodge truck, and a Nissan automobile. With respect to each, the government was required to prove that he (1) knowingly conducted a financial transaction, (2) which involved the proceeds of unlawful activity, (3) with the intent to promote or further that unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i). The unlawful activity at issue was Munoz–Romo's drug trafficking. Again, because of Munoz–Romo's failure to move for a judgment of acquittal after presentation of the evidence, we are limited to determining whether there has been a manifest miscarriage of justice.

Munoz–Romo acknowledges that the financial transactions were conducted, but contends that the government failed to prove that they involved the proceeds of unlawful activity. He maintains, erroneously, that the only evidence produced by the government concerning this element was that he had a limited income. And, citing *United States v. Blackman*, 897 F.2d 309, 317 (8th Cir.1990), he contends correctly that proof of his limited income, by itself, is insufficient to support his money laundering convictions. However, the jury is entitled to consider such proof in combination with additional evidence, such as "evidence of [a] defendant's drug trafficking" or "large sums of unexplained currency." *Id.*

As noted, the jury was presented with far more evidence of money laundering than simply Munoz–Romo's limited income. There was evidence that he engaged in drug trafficking activities during the time period that the transactions in issue were conducted. For example, Ramiro Martinez, a former co-worker, testified that he observed Munoz–Romo selling cocaine and heroin at their place of employment, and that, during the two-year period prior to the arrest, he accompanied Munoz–Romo on several trips to Houston, Texas, during which Munoz–Romo would purchase drugs for later resale. And, the jury was entitled to consider the several items of drug paraphernalia seized at Munoz–Romo's residences as evidence of drug trafficking. For example, a special agent with the IRS's Criminal Investigation Division, testified that lactose (of which several bottles were seized at Munoz–Romo's residences) is a common cutting agent used by narcotics distributors to dilute drugs in order to increase profitability.

The jury also heard evidence that Munoz–Romo used the items purchased in these transactions in furtherance of drug trafficking activity. Martinez testified that he observed Munoz–Romo with large sums of money received from drug sales, and that he kept that money at his North Wheeler Street residence. He further testified that the trips to Houston to purchase drugs were taken in the Dodge, and, also, that he had observed Munoz–Romo dealing drugs from both the Dodge and the Nissan.

Obviously, the large amounts of currency seized at Munoz–Romo's residences were relevant to the issue of money laundering. The currency seized at the East Warren Street residence was secreted throughout the house (including in the rafters of the utility room ceiling); at the Sherwood Avenue apartment, it was buried in back of the apartment. Munoz–Romo attempted to explain these funds by contending that he had received $38,000 in an inheritance from his mother in Mexico, and $18,500 from Eliseo Guzman, his former employer at a shoe repair shop.

The government, however, presented evidence refuting this claim. Eva Guzman, Eliseo Guzman's widow, testified that she was unaware of any such bequest to Munoz–Romo, and that her husband had not left any money to her or their three children when he died. Moreover, Munoz–Romo was interviewed on the day the search warrants were executed (but before any money was found) by John Brown, a revenue agent for the IRS. Brown testified that Munoz–Romo informed him that he had received approximately $12,000 to $18,000 in an inheritance from either his mother or father one or two years previously, and that he had already spent that inheritance. Moreover, the jury was entitled to consider the implausibility of Munoz–Romo's attempts to account for the currency. "An implausible account of exculpatory events suggests that the defen-

dant desires to obscure his criminal responsibility. A factfinder need not ignore such an implausible account; under appropriate conditions, the implausible account provides persuasive circumstantial evidence of the defendant's consciousness of guilt." *United States v. Diaz–Carreon,* 915 F.2d 951, 955 (5th Cir.1990).

In sum, and viewing the evidence in the light most favorable to the verdict, there was, obviously, no manifest miscarriage of justice on the issue of money laundering.

## C.

Munoz–Romo asserts he was denied effective assistance of counsel at trial in violation of the Sixth Amendment to the United States Constitution. However, this contention was not presented to the district court. "The general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Higdon,* 832 F.2d 312, 313–14 (5th Cir.1987) (citing *United States v. McClure,* 786 F.2d 1286, 1291 (5th Cir.1986), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988); *United States v. Freeze,* 707 F.2d 132, 138–39 (5th Cir.1983)). *Accord United States v. Bounds,* 943 F.2d 541, 544 (5th Cir.1991); *United States v. Lewis,* 902 F.2d 1176, 1180 (5th Cir.1990).

We consider "claims of inadequate representation on direct appeal only in rare cases where the record allow[s] us to evaluate fairly the merits of the claim." *Higdon,* 832 F.2d at 314. "To succeed on any claim of ineffective assistance of counsel, a defendant must show that: (1) the attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that except for the attorney's unprofessional errors, the results of the proceeding would have been different." *United States v. Kinsey,* 917 F.2d 181, 183 (5th Cir.1990) (citing *Strick-*

*land v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). Based on this record, we cannot fairly evaluate the merits of this claim. Accordingly, we decline to address it, without prejudice to Munoz–Romo's right to raise it in a proceeding pursuant to 28 U.S.C. § 2255.[6] *Higdon,* 832 F.2d at 314; *McClure,* 786 F.2d at 1291; *Freeze,* 707 F.2d at 139.

## D.

Munoz–Romo contends that the behavior of the trial judge established that he was "predisposed against [him]" and denied him due process under the Fifth Amendment. He asserts that the judge stated in a side bar conference that he believed Munoz–Romo was lying, and later suggested the same to the jury. However, because Munoz–Romo did not object at trial to any conduct or comments of the trial judge, we review this issue only for plain error. *See* Fed.R.Evid. 103; Fed.R.Crim.P. 52(b).

" 'Plain error' is error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991). "It is a mistake so fundamental that it constitutes a 'miscarriage of justice.' " *Id.* "Alternatively stated, when a new ... legal issue is raised for the first time on appeal, plain error occurs where our failure to consider the question results in 'manifest injustice.' " *Id.* And, "[e]rrors of constitutional dimension will be noticed more freely under the plain error doctrine than less serious errors." *Id.* (citing *Alexander v. United States,* 390 F.2d 101, 103 n. 3 (5th Cir.1968)).

The exchange in question is as follows: [DEFENSE COUNSEL]: ... Your Honor, I'm going to object. He's arguing and badgering the witness.

---

**6.** As noted, Munoz–Romo's § 2255 motion in the district court, alleging ineffective assistance of counsel because of his failure to appeal, was stayed pending disposition of this appeal. *See* note 3, *supra.*

THE COURT: Let me see counsel up here.

(Sidebar conference:)

THE COURT: I'm going to permit you to continue this line of questioning. And I want to make my ruling [outside] the presence of the [jury]. Your witness is lying. Your witness has flat-out told the prosecutor that was his handwriting. And then when he got in a bind, he denied saying that.

[DEFENSE COUNSEL]: I—that's fine, your Honor. I thought that he said some of it was his handwriting and some of it—

THE COURT: Counsel, he's been through it. He said, 'Okay.' Then moments ago he said, 'Show me where that is.' Then a few moments later he admitted to that line. Then when the witness saw where [the prosecutor] was going, he said, 'Oh, some are mine, some aren't mine.' He's not being a cooperative witness. So, I'm going to let [the prosecutor] work on him a while. I think it's only fair.

[DEFENSE COUNSEL]: That's fine, Judge.

(Open court:)

[THE PROSECUTOR:] Now, Mr. Munoz, I thought you told me a few moments ago this second number—in fact, you read it off—'375.00–1½,' and then you corrected yourself to '½'—did you say that was your writing a while ago?

[MUNOZ–ROMO:] Let me see it a little bit. I see that I—my mistake now. I did say '1½.' But I see that it's '½' now. It's been shown to me very—and taken away very quickly.

THE COURT: Wait a minute. The record will reflect that the defendant has had ample opportunity and that the prosecutor is not taking away anything from the defendant. If the defendant would like additional time to examine the document, then he now has the time.

No. No. There's been no question put to you. You answer the prosecutor's question. He asked you a moment ago a question to which you gave an answer. It is his belief that you're changing your answer. And he has asked you for your explanation of what he believes to be your change. That's going to be up to the jury to decide. But he's entitled to ask his question. Please answer his question.

"To constitute constitutional error ... the trial court's actions, viewed as a whole, must amount to intervention which could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *United States v. Davis,* 752 F.2d 963, 974 (5th Cir.1985) (citing *United States v. Abrams,* 568 F.2d 411, 423–24 (5th Cir.), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978)). "In addition, such judicial intervention must be qualitatively and quantitatively substantial to meet this test." *Davis,* 752 F.2d at 974 (citing *United States v. Robinson,* 687 F.2d 359, 361 (11th Cir.1982)).

■■■ The trial judge's comment that Munoz–Romo was lying was made outside the presence of the jury and, therefore, could not have influenced it. The response in open court to Munoz–Romo's statement that he had not been given sufficient time to review a document did not suggest to the jury that Munoz–Romo was being untruthful. Instead, the comments advised Munoz–Romo, who was testifying through a Spanish-speaking interpreter, why the prosecutor was questioning him regarding an apparent discrepancy in his testimony. The district judge correctly noted that it was for the jury to decide whether a discrepancy existed.

This single exchange, viewed in the context of the entire record, does not amount to judicial intervention which could have led the jury to a predisposition of guilt. Furthermore, the trial court later instructed the jury:

Do not assume from anything that I may have said or done during the trial that I have any opinion concerning any issues in this case. Except for the instructions that I give to you on the law at this moment and other moments in the trial, you should disregard anything that I may have said during the trial in arriving

at your own findings as to the facts of the case.

As in *Davis*, "[s]uch a curative instruction militates against any finding of prejudice." 752 F.2d at 975. There is no error, plain or otherwise.

### E.

■ Finally, Munoz–Romo contends that his sentences as a felon in possession of the RG revolver, under § 922(g)(1) (count 5) and § 924(e) (count 7), violated his rights under the Fifth Amendment. Munoz–Romo does not contend that he was not properly subject to the § 924(e) enhancement, but only that he should not have received both a 22 month sentence for violation of § 922(g)(1) *and* an enhanced 180 month sentence under § 924(e).

As noted, however, Munoz–Romo made no objections at the sentencing hearing, nor did he object to the sentencing recommendations contained in the PSI. Therefore, once again, we review the sentence only for plain error. *Lopez*, 923 F.2d at 50. "The plain error doctrine requires parties to raise objections at procedurally opportune junctures as early in the judicial process as possible. In the sentencing process, '[t]he guidelines do not impose the sentence, they provide a framework for *a district court* to impose a sentence.'" *Id.* (alteration in original) (emphasis in original) (quoting *United States v. Mejia–Orosco*, 867 F.2d 216, 219 (5th Cir.), *cert. denied*, 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989)). "It [is] incumbent upon [the defendant] to make and factually develop in the district court all arguments concerning application of the guidelines he believed might persuade the judge to alter the sentence he now challenges." *Lopez*, 923 F.2d at 50.

"Section 924(e)(1) ... establishes a minimum fifteen-year sentence for violations of § 922(g) by those who have three prior 'dangerous felony' or 'serious drug offense' convictions." *Smith*, 930 F.2d at 1089. However, § 924(e) does not create an offense separate from § 922(g), but, instead, "is intended only to provide enhanced punishment for those persons convicted under § 922(g) who also have three previous felony convictions." *United States v. Affleck*, 861 F.2d 97, 99 (5th Cir. 1988), *cert. denied*, 489 U.S. 1058, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). The government concedes that Munoz–Romo should not have received separate sentences under each provision. Accordingly, and because this is a legal issue, Munoz–Romo's sentences as a felon in possession of the RG revolver under §§ 922(g) and 924(e) constitute plain error.

As noted, Munoz–Romo has not challenged the finding that he was properly subject to the enhancement provision of § 924(e). Obviously, an enhanced sentence is designed to be used instead of the regular, or shorter, sentence. Therefore, we vacate the 22 month sentence on count 5, and affirm the 180 month enhanced sentence imposed under § 924(e) on count 7. *See United States v. Bates*, 896 F.2d 912, 913 (5th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990) (where defendant erroneously received double sentence for bank robbery, the sentence imposed for the most aggravated form of the bank robbery affirmed while other sentence was vacated); *Sullivan v. United States*, 485 U.S. 1352, 1355 (5th Cir.1973) (to eliminate necessity of additional judicial work by district court, this court can vacate erroneous sentence and leave undisturbed sentence properly imposed).

### III.

For the foregoing reasons, Munoz–Romo's convictions are AFFIRMED. Because we vacate his sentence on count 5, his sentence is AFFIRMED IN PART and VACATED IN PART.