**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eric MARROQUIN, Defendant–Appellant.**

No. 88–6136.

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1989.

Rehearing and Rehearing En Banc Denied Oct. 30, 1989.

---

Stanley G. Schneider, Houston, Tex., for defendant-appellant.

Paul E. Naman, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Beaumont, Tex., for plaintiff-appellee.

Before BROWN, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Eric Marroquin was convicted of mail fraud and conspiracy to commit mail fraud for schemes involving inflated insurance claims for a number of horses. He appeals his conviction on several grounds, including violation of the Speedy Trial Act, double jeopardy, improperly admitted evidence, and insufficient evidence. We hold that the exclusions found in section 3161(h) of the Speedy Trial Act do not apply to computing the thirty days during which a defendant may not be brought to trial under section 3161(c)(2), so Marroquin is not entitled to relief on Speedy Trial Act grounds. His other claims are likewise meritless, and we therefore affirm.

## I. Facts

On June 8, 1987, Marroquin was indicted along with seven other defendants on 58 counts alleging mail fraud and conspiracy to commit mail fraud. He made his first appearance before the court with counsel on June 18, 1987. Various motions were filed with the trial court between that time and August 7, 1987, when a superseding indictment was filed that included two new defendants. The last named defendants made their appearance on August 11, 1987. The court continued to entertain motions, including motions for severance, up until October 19, 1987, when the severance motions were decided and the jury was selected for Marroquin's trial. On that date

Marroquin filed his motion to dismiss the indictments under 18 U.S.C. § 3161(c)(1) for failure to bring him to trial within seventy days of his initial appearance. The trial court denied this motion, finding that less than seventy days had passed between the appearance of the last named defendants and the impaneling of the jury. The district court also noted that once the exclusions under section 3161(h) were applied to the computation of time, for purposes of § 3161(c)(1) only 24 includable days had passed between Marroquin's appearance and the beginning of his trial. Upon hearing this the defendant changed his tune, and on October 26, 1987, he moved for dismissal under 18 U.S.C. § 3161(c)(2) for violation of the Speedy Trial Act in commencing trial less than thirty days after his initial appearance. The trial court denied this motion, refusing to apply the section (h) exclusions to the computation of that thirty day period. At this point Marroquin's counsel requested a two week continuance to prepare for trial. He was granted a five day continuance, and the trial actually commenced on November 3, 1987.

The second indictment contained 74 counts. Marroquin was charged with seven counts of conspiracy to commit mail fraud (counts 8, 15, 26, 32, 40, 45 and 49), and was charged with 27 counts of violating 18 U.S.C. § 1341 (counts 1–7, 9–14, 24, 25, 30, 31, 37–39, 41–44, and 46–48). After nearly a month long trial the jury found Marroquin guilty on all counts except counts 4, 9, and 15, on which the jury could not reach a verdict.

Separate conspiracies were charged for each horse that Marroquin overinsured that later died or was stolen. Each of the seven conspiracies involved Michael McKinney, but each involved various other parties who generally were involved with only one of the horses. All seven alleged a conspiracy to violate 18 U.S.C. § 1341, the mail fraud statute, and the overt acts alleged in each of the counts were similar: purchasing and insuring a horse for more than its purchase price, filing a claim for that amount when the horse died or was stolen within a short time after the sale, and receiving money on each policy. These acts took place over a period of two years, in and around the vicinity of Beaumont, Texas.

At the time that the jury was selected both Marroquin and McKinney maintained that they were innocent, and both were set to go to trial together. Shortly after jury selection, however, McKinney chose to plead guilty to the charges against him and agreed to testify against his former co-defendant. McKinney testified at trial and Marroquin objected to the admission of some of this testimony, and to the admission of a portion of the plea agreement between the United States and McKinney. Marroquin also objected to the admission of testimony concerning his participation in an insurance fraud involving a Corvette.

## II. Speedy Trial Act

■ Marroquin asserts that his trial began within thirty days of his initial appearance in violation of 18 U.S.C. section 3161(c)(2).[1] Although more than thirty calendar days had passed since his appearance, if the exclusions enumerated in 18 U.S.C. section 3161(h)(1)(F)[2] were applied to computing the time then less than thirty includable days had passed before his trial commenced. He urges us to apply the section 3161(h) exclusions to computing the thirty day period during which trial may not commence under section 3161(c)(2).

1. Section 3161(c)(2) provides:
   Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.

2. Section 3161(h)(1)(F) provides that
   (h) The following periods of delay shall be excluded in computing the time within which an information or indictment must be filed or in computing the time within which the trial of any such offense must commence:
   (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
   (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

This is a case of first impression in this Circuit. The Courts of Appeals which have addressed this issue have held that the section 3161(h) exclusions do not apply to the computation of time under § 3161(c)(2). *United States v. Mastrangelo*, 733 F.2d 793 (11th Cir.1984); *United States v. Wooten*, 688 F.2d 941 (4th Cir.1982). We believe these decisions to be well reasoned and decline to set out a different rule for this Circuit.

Both *Mastrangelo* and *Wooten* rely on the express language of section 3161(h), which states that the enumerated periods of delay "shall be excluded in computing the time within which an information or indictment must be filed, or in computing the time within which the trial of any such offense must commence." *Mastrangelo*, 733 F.2d at 796–97; *Wooten*, 688 F.2d at 949–51. "There is no language in section 3161(h) which suggests even remotely that its exclusion provisions have any reference to or connection with the time limits fixed by section 3161(c)(2)." *Wooten*, 688 F.2d at 950.

We agree with the Fourth Circuit that this exclusion must have been intentional and not inadvertent, because when Congress intended to incorporate the provisions of section 3161(h) it said so in clear and unmistakable language. *Id.* In section 3161(d)(2), Congress stated: "The periods of delay enunciated in section 3161(h) are excluded in computing the time limitations specified in this section." The explicit inclusion of the section 3161(h) exclusions in other sections of the Act and its omission in 3161(c)(2) would seem to be conclusive evidence that Congress did not intend the exclusions in section (h) to apply to section (c)(2). *See Lankford v. Law Enforcement Assistance Admin.*, 620 F.2d 35, 36 (4th Cir.1980); *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972).

Marroquin argues that this is an incorrect conclusion because the legislative history of the Speedy Trial Act indicates that section 3161(h) exclusions should apply to section 3161(c)(2). The basis for this argument is found in the Senate Report on the 1979 Amendments to the Act, which states:

Prohibiting trial less than 30 days after the defendant appears in a position to begin preparing his defense more fully protects basic due process rights. It is the Committee's intent that the exclusions provided in section 3161(h) apply to the 30–day minimum to trial provision. Therefore, if an event occurs which would automatically exclude time under 3161(h), such as a pretrial mental examination, that is not only excluded from computing the time within which the trial must occur prior to imposition of the dismissal sanctions, but time would also automatically be excluded in computing the 30–day minimum period of time, during which the judge could not schedule trial without the defendant's consent.

Sen. Rep. 96–212, 96 Cong. 1st Sess. (1979), p. 32. The House Report on the 1979 Amendments had no similar comment, however, and there is no Conference Report.

We do not find this legislative history compelling. The plain language of the statute does not call for the application of section (h) exclusions to section (c)(2), and we cannot infer from one committee report that Congress meant the exclusions to apply despite this plain language. As the Fourth Circuit noted, "the report of one House 'does not go very far to show the intention of a majority of both houses of Congress.'" *Wooten*, 688 F.2d at 950, quoting *Davidson v. Gardner*, 370 F.2d 803, 828 (6th Cir.1967).

The Committee on the Administration of the Criminal Law of the Judicial Conference of the United States also has stated:

In spite of language to the contrary ..., it is the view of this Committee that the thirty-day minimum period for the commencement of trial is not extended by the exclusions of Section 3161(h).... Moreover, if the thirty-day minimum were interpreted as subject to the exclusions, the provision would become a powerful weapon for defendants who wanted to delay their prosecutions, a result that is wholly at odds with the major purpose of the statute. Under such an interpretation, the court could be compelled to defer a trial simply because the defen-

dant filed a motion or because the court took a pretrial matter under advisement—both events that trigger periods of excludable time under Section 3161(h)(1).

"Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended," 12–14 (1981).

Not applying the exclusions of § 3161(h) to the computation of time under § 3161(c)(2) does not place defendants at an unfair disadvantage. While the disposition of a motion may affect how a defendant must conduct his defense, a defendant will not necessarily be rushed to trial with no chance to prepare when the charges against him are changed or co-defendants are added or dropped from the indictment. A defendant may still be granted a continuance on any appropriate ground.

■ In light of its purpose and in light of Congress' failure to provide a sanction for violation of § 3161(c)(2), a defendant must show that he was prejudiced by the untimely commencement of trial in order to obtain a new trial. *United States v. Grosshans*, 821 F.2d 1247, 1252–53 (5th Cir. 1987). In this case Marroquin has not shown that he was prejudiced by failure to delay his trial. It was not until his motion for dismissal based upon too great a *delay* in bringing him to trial was denied that the defendant thought to claim that he was being rushed to trial. 138 Calendar days passed between Marroquin's first appearance and the beginning of his trial. During all of that time he knew what the charges were against him, and what evidence the government intended to use against him. It is true that exactly which defendants were to be tried together was not decided until mid-October, but Marroquin's counsel asked for and was granted a continuance to prepare for trial when his motion for dismissal was denied. Marroquin was not prejudiced by the fact that a longer continuance was not granted.

Defendant's trial was commenced within the time period allowed by the Speedy Trial Act, and we decline to reverse his conviction on those grounds.

## III. Double Jeopardy

Marroquin contends that he has been more than once placed in jeopardy for the same offense because the multiple conspiracies for which he was tried and convicted in reality constituted one conspiracy. The indictment charged separate conspiracies to defraud the insurance companies with respect to each horse, but Marroquin contends that if any conspiracy existed, it was one agreement to fraudulently collect on inflated equine insurance policies.

■ The double jeopardy provision of the Fifth Amendment prohibits multiple prosecutions for the same offense. *See United States v. Marable*, 578 F.2d 151 (5th Cir.1978). Because the essence of a conspiracy lies in the agreement to violate the law, the government must prove a separate agreement for each conspiracy conviction it seeks. *Id.* at 153.

■ In this case, however, no motion to dismiss the indictment was filed pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure, and Marroquin has raised this issue for the first time on appeal. In *United States v. Gerald*, 624 F.2d 1291, 1300 (5th Cir.1980), this court held that failure to object to an indictment on grounds of multiplicity prior to trial waived that objection pursuant to Rule 12(b)(2). Therefore, Marroquin is precluded from challenging his conviction on more than one count of conspiracy.

■ Even if a defendant waives his right to assert a multiplicity claim, he may still object to multiple sentences. *United States v. Cauble*, 706 F.2d 1322 (5th Cir. 1983); *United States v. Bradsby*, 628 F.2d 901 (1980). Even then, if the sentences are to be served concurrently the defendant may not raise a multiplicity claim if it was not raised prior to trial. *Cauble*, 706 F.2d at 1334–35. This concurrent sentence doctrine is inapplicable here, however, for although the prison sentences of all conspiracy counts run concurrently, there were mandatory assessments as to Counts 32, 40, and 49. These mandatory assessments make the sentences cumulative. *See Ray*

v. United States, 481 U.S. 736, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987).

■■■ It is impossible for this court to determine that there was an error made by the district court in determining this issue, for this issue was never before the district court. It is therefore not a proper issue to be determined on direct appeal. The issue would be more properly raised in a motion pursuant to 28 U.S.C. § 2255, which would provide for a hearing before the district court wherein both parties could have an opportunity to present evidence on the issue to a fact finder. See United States v. Atkins, 834 F.2d 426 (5th Cir.1987).

Marroquin failed to object to the indictment on the ground of multiplicity prior-to trial, so he is precluded from attacking his convictions on that ground. Marroquin may contest the validity of multiple sentences, despite his failure to object earlier, in a collateral proceeding pursuant to 28 U.S.C. § 2255.

### IV. Jury Instruction Re: Aiding and Abetting

■■■ Marroquin argues that the aiding and abetting instruction given to the jury [3] was improper in that no charge of aiding and abetting was included in the indictment.

In United States v. Gordon, 812 F.2d 965 (5th Cir.1987), this court held that "the words 'aid and abet' need not appear in the indictment in order to sustain a conviction as aider and abettor," and that "one who has been indicted as a principal may be convicted on evidence showing that he has merely aided and abetted the commission of the offense." 812 F.2d at 969. Therefore, this instruction was proper as a statement of the law for any of the substantive offenses for which Marroquin was indicted.

■■■ Marroquin's contention that this instruction lessened the government's burden of proof with regard to the conspiracy charges against him is likewise meritless. The conspiracy counts on which Marroquin was convicted all refer to conspiracies with specific persons. There is no evidence that the jury could have found a conspiracy with the named persons based upon some joint effort with persons unknown.

### V. Admissibility of Evidence

Marroquin has objected to the admission of several pieces of evidence. In particular, he objects to the admission of: (1) his former co-defendant's testimony concerning other equine insurance frauds that the co-defendant had perpetrated; (2) the part of McKinney's plea agreement calling for the payment of $400,000 restitution; and (3) the evidence of an insurance fraud in which Marroquin had participated involving a non-existent Corvette.

The standard of review of a trial court's determination that evidence is admissible is whether or not there has been an abuse of discretion. United States v. Vincent, 681 F.2d 462, 465 (5th Cir.1982). Here the district court did not abuse its discretion, and all of the evidence about which Marroquin complains was properly admitted.

■■■ Co-defendant McKinney became a government witness after his guilty plea. In addition to testifying about his and Marroquin's involvement in the insurance fraud of which Marroquin was charged, McKinney testified about other equine insurance frauds he had perpetrated. The judge gave an instruction to limit the use of this evidence to determining witness credibility. Evidence of McKinney's other fraudulent activity would be a proper area for cross-examination under the Federal Rules of Evidence, section 608(b), and Marroquin had access to this information. It is permissible for the prosecution to "blunt the sword" of anticipated impeachment by revealing the information first. As this court

---

**3.** The charge to the jury included the following:
 The law recognizes that, ordinarily anything a person can do for himself may also be accomplished by him through direction of another person as his agent, or acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
 ..., then the law holds the defendant responsible for the acts and conduct of such other persons as though he had committed the acts or engaged in such conduct himself....

noted in *United States v. Borchardt,* 698 F.2d 697 (5th Cir.1983):

> Counsel presenting witnesses of blemished reputation routinely bring out "such adverse facts as they know will be developed on cross-examination" in order to avoid even the appearance of an "intent to conceal."

698 F.2d at 701.

Marroquin implies that this admission somehow tainted him, and therefore was prejudicial and should not have been admitted. Marroquin has not shown such prejudice. There is no evidence that the government tried to use this evidence to imply that Marroquin participated in these other frauds or was guilty of crimes for which he was not being charged. Marroquin cites us to no authority to show that the trial court's limiting instruction was not adequate. The trial court did not abuse its discretion in admitting this evidence.

■ Marroquin also argues that the admission of the plea agreement showing McKinney's $400,000 restitution obligation was prejudicial. He has not demonstrated undue prejudice from the admission of this evidence. The subject of the plea agreement was first brought up on direct examination by the prosecution in general terms. The defense did not object to this testimony. On cross-examination defense counsel inquired about this plea agreement on at least three separate occasions. Upon redirect the prosecution tendered the plea agreement evidence to which Marroquin objects. Marroquin does not object to the admissibility of the entire plea agreement, only to the part that outlines the obligation to pay $400,000 in restitution.

A witness-accomplice guilty plea may be admitted into evidence if it serves a legitimate purpose and a proper limiting instruction is given. *United States v. Borchardt,* 698 F.2d 697, 701 (5th Cir.1983). Here the plea agreement was introduced into evidence with the limiting instruction that it was to be considered only as evidence of the credibility of witness McKinney. In a similar case before the Eleventh Circuit, *United States v. McClain,* 823 F.2d 1457 (11th Cir.1987), the court found that it

was proper to introduce a plea agreement to show that there was no "sweetheart deal," the reason given for the introduction in this case. Given that the subject of the plea agreement was raised by the defense on direct examination, the agreement was introduced to show that there was no sweetheart deal between McKinney and the government, and the trial judge gave a proper limiting instruction, there was no error in admitting this evidence.

■ There was also no error in admitting evidence of Marroquin's participation in an earlier insurance fraud involving a non-existent Corvette. The testimony concerning the Corvette fraud was tendered at a hearing to determine its admissibility, and the district court found that this evidence was highly probative of intent and was not unduly prejudicial. *See United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978). Throughout trial Marroquin maintained that he had no intention to defraud the insurance companies, and that he did not know how the false information he supplied them would be used. The evidence of his past creation of fictitious documents in relation to an automobile insurance fraud was evidence that he did know how insurance companies would use the information and that he did have the intent to defraud the insurance companies issuing the equine insurance policies. *See United States v. Chenault,* 844 F.2d 1124 (5th Cir.1988; *United States v. Gordon,* 780 F.2d 1165 (5th Cir.1986). The district court did not abuse its discretion in admitting this evidence.

### VI. Sufficiency of Evidence

■ There are two basic issues on which Marroquin contests the sufficiency of the evidence as a basis for his convictions. First, he claims that there was insufficient evidence to prove that he did not pay what he claimed he paid for two of the horses. Second, he claims that there was insufficient evidence to prove that he intended to defraud the insurance companies. These assertions are contrary to the record which shows that there was sufficient evidence to convict him on all counts.

There was conflicting evidence about the amount that was paid for two of the horses: Marroquin had a Bill of Sale for $25,000, but two people testified that he only paid $6,000, showing bank receipts for that amount. Especially given that there was evidence that Marroquin had forged documents relating to other horses, there was ample evidence for the jury to determine that his insurance claim was for more than the purchase price of the horses.

Marroquin's claim that there was insufficient evidence to find intent to defraud is likewise specious. There is evidence that he falsified the purchase price of various horses, sent that information to the insurance companies when applying for insurance *and when making loss claims*, and that he collected money under the policies. There was certainly enough evidence that this was all a part of a scheme to make money at the insurance companies' expense, as the horses Marroquin purchased had an alarming propensity to die shortly after he purchased them and insured them for far greater than their true purchase price. This was enough evidence for the jury to have determined beyond a reasonable doubt that Marroquin had the requisite intent.

### VII. Conclusion

Marroquin first claimed that there was too great a delay in bringing him to trial, then claimed that not enough time had passed before bringing him to trial. It is precisely this sort of gamesmanship that must be avoided in the administration of the Speedy Trial Act, and we therefore abide by the plain language of that statute in holding that the exclusions of section 3161(h) do not apply to the computation of time under section 3161(c)(2). Accordingly, Marroquin was brought to trial in the time allowed under the Speedy Trial Act. Marroquin has not properly raised his multiplicity claim in this court as it was never raised in the court below, the trial court's charge to the jury was correct, and Marroquin's claims relating to the admissibility and sufficiency of the evidence are without merit.

AFFIRM.