**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joe Allen BOUNDS, Defendant–
Appellant.**

**Nos. 92–4363, 92–4747.**

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1993.

Rehearing and Rehearing En Banc
Denied March 24, 1993.

John William Focke, II (court appointed), Monroe, LA, for defendant-appellant.

Joe Allen Bounds, Bastrop, TX, pro se.

Camille A. Domingue, Asst. U.S. Atty., Dept. of Justice, Lafayette, LA, and Joseph S. Cage, U.S. Atty., Shreveport, LA, for plaintiff-appellee.

Before REAVLEY, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

## I.

Defendant Joe Allen Bounds moved from Texas to Louisiana to set up an amphetamine manufacturing business. He taught others how to "cook" amphetamine and served as a supplier of chemicals and glassware. The defendant, his common-law wife Deborah Richardson, and four others set up a lab in a double-wide trailer near Kingston, Louisiana, in early 1988. Bounds obtained glassware and chemicals for use in the operation. A camper trailer normally parked adjacent to the trailer served as a sleeping place for Bounds and Richardson. Bounds kept a Winchester 12–gauge shotgun and a Smith & Wesson .357 revolver to protect the drugs.

Because he feared detection, Bounds decided to transfer the operation to a single-wide trailer near Kitsatchie, about 11.5 miles away. Bounds moved one set-up of equipment to this trailer and stored four extras in a rental locker near Shreveport. The authorities established surveillance of each location and executed search warrants at the trailers. At the single-wide, they found a cook in progress and seized numerous pieces of glassware, chemicals, gas masks, recipes, and weapons. The double-wide contained evidence of prior cooks, including chemicals, scales, thermometers, plastic tubing, rolling papers, ammunition for a shotgun, and other incriminating objects. The authorities found the shotgun and revolver in the camper trailer; Bounds admitted the weapons were his. In the storage locker, the authorities found much additional evidence.

## II.

On July 21, 1988, a grand jury indicted Bounds and four others on a variety of drug and gun charges arising out of their operation of two related clandestine amphetamine laboratories. The indictment charged Bounds with conspiracy to manufacture amphetamine and phenylacetone in violation of 21 U.S.C. § 846 (count I), manufacturing and attempting to manufacture amphetamine and phenylacetone in violation of 21 U.S.C. § 841(a)(1) (count II), use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (count III), and being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count V). At arraignment, Bounds entered not guilty pleas to all four counts.

On the morning of trial, Bounds opted to change his plea to guilty as to counts I and V in exchange for the government's promise to dismiss the remaining counts at sentencing. Before sentencing, Bounds moved to withdraw his guilty plea, asserting that he was unaware of the consequences of that plea when he entered it. The district court denied that motion and sentenced Bounds to 300 months' imprisonment. On appeal of that ruling to this court, we ordered that the judgment of conviction be vacated and that the matter be remanded to the district court for further proceedings. *United States v. Bounds*, 943 F.2d 541 (5th Cir.1991).

Bounds was rearraigned on counts I, II, III and V and entered not guilty pleas to each count. After a two-day trial, he moved for acquittal pursuant to Fed. R.Crim.P. 29 and for a mistrial. The district court denied both motions, and the jury later returned a guilty verdict against Bounds as to all four counts. After his motions for arrest of judgment, acquittal,

and new trial were similarly denied, Bounds filed a timely notice of appeal.

After a sentencing hearing, Bounds was sentenced to 240 months' imprisonment on count I, 240 months' imprisonment on count II (132 months of which was to run consecutively with count I and the remainder of which was to run concurrently with count I), 60 months' imprisonment on count III (to run consecutively with counts I and II), and 60 months' imprisonment on count V (to run concurrently with his other sentences). The total sentence amounts to 432 months. The court also imposed a three-year term of supervised release as well as the mandatory $50 per count assessment.

Bounds appeals his conviction on numerous grounds under No. 92–4363. In addition, in No. 92–4747 Bounds appeals the district court's denial of his motion to correct the trial transcript.

## III.

We affirm the district court in No. 92–4747. At trial, the district court apparently allowed Deborah Richardson's counsel to sit near her while she testified. Bounds filed a motion to correct the trial transcript to reflect that Richardson conferred with counsel during her testimony. Because of our conclusion *infra*, we do not consider the alleged error or omission in the transcript to be material. In deciding Bounds's appeal in No. 92–4363, we will assume that Richardson did confer with counsel during her testimony. Consequently, we see no need to correct the transcript. We express no opinion as to the propriety of the district court's actions in a circumstance where the error in the transcript might be material.

## IV.

■ We now address the first of nine points of error Bounds raises in No. 92–4363. Bounds initially pleaded guilty to two of the four counts contained in the indictment; the district court's judgment dismissed the other two counts pursuant to the plea bargain. We reversed this judgment because the district judge failed properly to apprise Bounds of the period of supervised release he could receive. In an apparent blunder, the government failed to either reindict Bounds or move for reinstatement of the dismissed charges.

At trial, Bounds moved for a mistrial, alleging that the district court had no jurisdiction over two of the four counts. Although Bounds's counsel admits he knew of the mistake earlier, he did not raise the issue before trial because he wanted to create a double jeopardy issue. Bounds's motion nevertheless was timely. Fed. R.Crim.P. 12(b)(2). We express no opinion regarding the double jeopardy implications of these circumstances.

Our research does not reveal a previous case involving this factual scenario. Bounds relies upon cases that hold that reindicting the defendant or reinstating dismissed charges does not violate the double jeopardy clause where a plea bargain was reversed on appeal. *E.g., Harrington v. United States*, 444 F.2d 1190, 1193 (5th Cir.1971). These cases do suggest that the government ordinarily should reindict or move to reinstate the dismissed charges. We will assume, without deciding, that the government had to move to reinstate the charges.[1]

Bounds alleges that the government's error violated his Fifth Amendment right to indictment by a grand jury. Bounds was legally indicted, however, on the dismissed charges and alleges no prejudice from the government's error. Bounds knew that the government intended to try him on all four counts at trial as he was rearraigned on all counts after we reversed his first conviction. Indeed, Bounds' counsel admits he knew of the government's error at the time of rearraignment. Bounds identifies no illicit motive for the government's failure and can neither identify any harm to the preparation of his defense nor any unfair surprise he suffered at trial.

1. We need not address the government's suggestion that reversal of a conviction obtained via a plea bargain automatically reinstates charges dismissed pursuant to that plea bargain. We suggest that the government could place a provision to this effect in the plea bargain itself.

We hold that in the unique circumstances of this case, the government's failure to move to reinstate the dismissed charges was harmless error. *See United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); Fed.R.Crim.P. 52(a). In *Mechanik*, the Supreme Court held that prosecutorial misconduct which violated the defendant's Fifth Amendment right to indictment by grand jury was harmless error. We find the present case an even stronger occasion to apply harmless error analysis. Here, unlike *Mechanik*, Bounds can identify no prejudice resulting from the government's actions. In addition, the violation in *Mechanik* involved misconduct by the prosecutor before the grand jury. Here, Bounds does not claim any misconduct on the government's part. The prosecution did not attempt to gain any unfair advantage; it made a mistake. We caution the government that a case may well arise where the failure to reinstate dismissed charges does prejudice the defendant. In this case, we find no prejudice to Bounds and conclude any error was harmless.

### V.

█ Next, Bounds argues for reversal based upon the government's reference to a polygraph examination. During the examination of Deborah Richardson, the following exchange took place:

Q. Have you ever taken a lie detector test in your life?

A. Yes.

Q. At whose request?

A. Joe Bounds.

Q. What was the result of the test?

A. I passed.

Mr. Focke: Your Honor.

A. I passed.

Mr. Focke: I'm going to object.

The Court: Don't Answer.

Mr. Focke: Your Honor, Polygraph Examination.

The Court: Excuse me, don't. Ladies and gentlemen, If y'all will step out just a second.

The court never ruled on the objection. The context of the line of questioning the government was pursuing demonstrates that the prosecutor was attempting to elicit testimony from Richardson that Bounds beat her as a "result" of the polygraph examination. After the conference, the government elicited precisely that testimony. Bounds never requested a curative instruction, and none was otherwise given.

█ Bounds essentially argues for a *per se* rule of reversal at the mere mention of the use of the polygraph. We previously have rejected such a rule. *See United States v. Martino*, 648 F.2d 367, 391 (5th Cir. June 1981), *vacated in part on other grounds*, 650 F.2d 651 (5th Cir. July 1981) (per curiam), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982) (any prejudice caused by reference to polygraph cured by instruction). Bounds did not ask for a curative instruction. Consequently, we review only for plain error. Such an error must be so egregious that a miscarriage of justice has occurred. *United States v. Maceo*, 947 F.2d 1191, 1198 (5th Cir.1991). We conclude that under the facts and circumstances of the instant case, the mere reference to a polygraph examination does not amount to plain error.[2]

### VI.

█ Bounds next claims that the trial court erred by admitting evidence that his codefendant, Deborah Richardson had

---

**2.** We remind the government of the well-established rule of inadmissibility of polygraph evidence in this circuit. *E.g., United States v. Clark*, 598 F.2d 994, 995 (5th Cir.1979), *cert. denied*, 449 U.S. 1128, 101 S.Ct. 949, 67 L.Ed.2d 116 (1981). Other circuits have begun to erode the rule of *per se* inadmissibility. *E.g., United States v. Piccinonna*, 885 F.2d 1529, 1535–36 (11th Cir.1989) (en banc). The rule in this circuit cannot change, however, unless the court chooses to do so en banc. We caution that reference to a polygraph by counsel may warrant reversal in some cases where opposing counsel properly objects and requests a curative instruction. Our *Martino* holding extends only to cases where a witness makes reference to a polygraph examination without apparent encouragement of counsel. We may view the case differently where counsel has made the reference. Because of our holding, we leave this more difficult issue for another day.

pleaded guilty. This contention has no merit. Bounds did not object at trial or request a limiting instruction, so we review for plain error. We do not have to reach the plain error issue, however, as we find no merit in Bounds's claim. The government questioned Richardson only in anticipation of impeachment on cross examination, which we have previously approved. *See United States v. Valley*, 928 F.2d 130, 133 (5th Cir.1991); *United States v. Marroquin*, 885 F.2d 1240, 1246–47 (5th Cir.1989), *cert. denied*, 494 U.S. 1079, 110 S.Ct. 1807, 108 L.Ed.2d 938 (1990); *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir. 1983).

Moreover, Richardson's testimony only established that she had previously been convicted of conspiracy to manufacture methamphetamine. Her testimony mentions nothing about a guilty plea or that the conviction had to do with the events giving rise to Bounds's trial. Because the government never even made reference to Richardson's pleading guilty, we conclude that no error occurred.

### VII.

■ Bounds next objects that the court's instruction to the jury regarding the definition of the term "firearm" improperly expanded the indictment. Four firearms were relevant in the case, but only two of these were relevant to count V. The court gave the legal definition of "firearm" and proceeded to instruct the jury that all four firearms introduced as evidence were "firearms" within the scope of that definition. In referring to count V, the court stated that the term "firearm" was defined above. Bounds contends that this confused the jury, as count V involved only two of the four guns.

Again, because Bounds did not object to the jury instructions at trial, we review for plain error. *See* Fed.R.Crim.P. 30. Again, we conclude that no plain error occurred. The court's instruction refers back to the *definition* of the term firearm, not the *instruction* that all four guns constituted firearms within the meaning of that definition. In addition, the jury had access to the indictment at all times during deliberations and could read for itself what the indictment charged.

### VIII.

■ As his next point of error, Bounds alleges we should reverse his conviction because Deborah Richardson's counsel was allowed to sit and confer with her during her testimony. Apparently, the district court allowed Richardson's counsel to sit next to her on the stand while she was testifying. As we indicated above, we will assume *arguendo*, although the record does not so reflect, that Richardson did confer with her counsel during questioning. During the examination, Richardson's counsel did ask Bounds's attorney to repeat a question and did ask the judge which page of a document Richardson should read. Bounds alleges that this violated his right to confrontation.

Once again, Bounds failed to object at trial, so we review for plain error. Bounds does not suggest how his ability to cross-examine Richardson was diminished, nor does he suggest any testimony he was unable to elicit as a result of the alleged error. In fact, Bounds's brief describes how he successfully impeached Richardson on cross-examination.

■ We do not think this case implicates the confrontation clause. It appears Bounds's right to confrontation was not harmed in the least. Not only did Bounds have the opportunity to cross-examine Richardson, it appears to have been effective. Although we are troubled by the district court's actions and strongly disapprove of allowing counsel to sit next to a witness while she testifies, we hold that no plain error occurred, as Bounds has not identified any prejudice from the district court's error.

### IX.

■ Bounds next alleges that the jury should have determined the amount of drugs involved in the crime. He contends the amount of drugs constitutes an element of the crime, as differing amounts of drugs

subject a defendant to differing penalties. We find no merit in this argument, as we have previously held that the quantity of drugs does not constitute an element of the crime; rather quantity is a fact to consider in sentencing. *United States v. Royal*, 972 F.2d 643, 650 (5th Cir.1992) (citing *United States v. Lokey*, 945 F.2d 825 (5th Cir. 1991)), *petition for cert. filed*, 61 U.S.L.W. 3403 (Nov. 16, 1992) (No. 92–855). At least four other circuits have rejected this argument. *See United States v. Lam Kwong– Wah*, 966 F.2d 682, 685 (D.C.Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992).

## X.

◼ Next, Bounds alleges that the district court erred by not allowing him to have counsel present during his pre-sentence interview. Once again, we have previously rejected this argument, reasoning that no right to counsel attaches at a presentence interview, as the interview is not a critical stage of the proceedings. *United States v. Woods*, 907 F.2d 1540, 1543 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 792, 112 L.Ed.2d 854 (1991); *United States v. Kinsey*, 917 F.2d 181 (5th Cir. 1990); *Brown v. Butler*, 811 F.2d 938 (5th Cir.1987). Consequently, Bounds's argument has no merit.

## XI.

◼ Bounds next contends that the district court erred in sentencing him to consecutive terms as to counts I and II, as count I constitutes an indispensable step to count II. Count I charges Bounds with conspiracy to manufacture phenylacetone and amphetamine, while count II charges Bounds with manufacturing or attempting to manufacture phenylacetone and methamphetamine.

Bounds relies upon *United States v. Forester*, 836 F.2d 856 (5th Cir.1988), where we held that the defendant could not be sentenced to consecutive terms for attempting

to manufacture methamphetamine and for possessing a chemical needed to produce methamphetamine. In *Forester*, we were careful to point out the unique circumstances of the case. We noted that the defendant produced the chemical from other chemicals as one step in the manufacturing process. Possession of the chemical, then, resulted only from attempts to manufacture the drug. We noted that the case may well have been different, for example, had the defendant acquired the chemical from others rather than producing it on his own.

We limit *Forester* to its facts and instead follow *United States v. Kleinebreil*, 966 F.2d 945, 952 (5th Cir.1992), where we held that a court may impose consecutive sentences for a drug offense and conspiracy to commit a drug offense under U.S.S.G. § 5G1.2(c). Agreeing to manufacture amphetamines is not an indispensable step in manufacturing them; Bounds could have manufactured them on his own without agreeing with anyone else. *See United States v. Miley*, 981 F.2d 1256 (5th Cir. Dec. 23, 1992) (unpublished). As a result, we conclude that count I does not constitute an indispensable step to count II.

## XII.

◼ Finally, Bounds alleges that the district court erred in calculating Bounds's sentence by relying upon the theoretical amount of amphetamine producible rather than upon the amount of phenylacetone producible. The district court used the drug equivalency table to compute Bounds's sentence based upon the theoretical amount of amphetamine producible with the amount of chemicals recovered. Bounds contends that using the equivalency for phenylacetone would produce a lower offense level. The record does not appear to contain any evidence of how much phenylacetone Bounds could have produced with the chemicals. As a result, we cannot make a meaningful harmless error analysis.[3]

---

**3.** The government suggests in its brief that the error was harmless because 18 kilograms of amphetamine would produce only a two-level

difference from 18 kilograms of phenylacetone. *Leaving aside the fact that a different offense level may have led the district court to impose a*

Bounds argues that where a general verdict makes it unclear what he was convicted of, and where the two possible offenses may result in two potentially different offense levels, the district court must choose the lower offense level. Bounds relies upon *United States v. Owens*, 904 F.2d 411 (8th Cir.1990), which involved a conviction for conspiracy to distribute and attempt to manufacture "methamphetamine/amphetamine." On appeal, the court determined that the general verdict made it impossible to determine which drug was involved in the conviction. For sentencing purposes, the court decided that the district court must use the violation carrying the lower offense level or must use a special verdict form.

The Eighth Circuit distinguished *Owens* in a later case, as the indictment in *Owens* charged the defendants with an offense involving one drug *or* another drug, while the later case concerned an indictment involving one drug *and* another drug. *United States v. Watts*, 950 F.2d 508 (8th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 1276, 117 L.Ed.2d 502 (1992). Here, Bounds's indictment says "phenylacetone and amphetamine." In the jury instructions, however, the district judge sometimes says "phenylacetone or amphetamine." Given the jury instructions, we conclude that this case looks more like *Owens:* We do not really know which drug (or both) the jury considered in deciding on conviction. In this circuit, moreover, even where the indictment says "and," the government, to sustain its burden, need only prove that one or the other drug was produced. *See United States v. McCann*, 465 F.2d 147, 162 (5th Cir.1972). Given this rule, we will never know upon which of two drugs, or both, the jury based its conviction, unless the court uses a special verdict form or the government charges the defendant with separate counts for each drug.

Because we cannot tell which drug the jury focused upon in convicting Bounds, we remand for resentencing. On remand, the district court could find that the producible amount of phenylacetone yields the same offense level as 18 kilograms of amphetamine. If that is the case, or if the equivalency table yields a higher offense level for the producible quantity of phenylacetone, the court may simply reimpose the original sentence. If, however, the equivalency table yields a lower offense level for phenylacetone, the district court must sentence Bounds using the lower offense level. We express no opinion as to whether the district court must impose a lower sentence on remand if the original sentence were to come within the range allowed by the lower offense level.

## XIII.

We AFFIRM Bounds's conviction on all counts. We VACATE Bounds's sentence and remand for resentencing in accordance with this opinion.

REAVLEY, Circuit Judge, concurring:

Instead of a formal motion by the United States Attorney to reinstate the second and third counts, the government attorney and defense attorney accepted Judge Walters' statement that the reversal of his judgment put the court and parties back where they were prior to the plea and dismissal of the two counts, i.e. back with the four counts. Bounds was rearraigned on the four counts and pleaded to each of them. Trial proceeded without objection. Counts two and three were reinstated by acceptance of all attorneys and the court. There was no error. If the counts were not somehow reinstated, I fail to see the harmlessness.

I concur in the judgment and the opinion except for part IV.

---

different sentence, the government assumes that an equivalent amount of phenylacetone could have been produced from the chemicals. Given that the two drugs have different molecular structures, basic chemistry tends to suggest that the respective amounts producible from a given quantity of precursor chemicals would be different. Without any expert testimony in the record on the issue, we certainly cannot assume the same amount of both drugs could be produced.