**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry Dean DUSENBERY,**
**Defendant–Appellant.**

**Nos. 02–3019, 02–3076.**

United States Court of Appeals,
Sixth Circuit.

Oct. 9, 2003.

444

Before: GILMAN and GIBBONS, Circuit Judges, and JORDAN, District Judge.*

* The Honorable Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

## OPINION

JORDAN, District Judge.

Appellant Larry Dean Dusenbery appeals his conviction and life sentence for conspiracy to distribute more than five kilograms of cocaine hydrochloride. Dusenbery argues that the district court did not have subject matter jurisdiction to try or sentence him on the conspiracy count; that it was error under *Apprendi* to sentence him to life in prison based on the drug quantity; that the district court erred in refusing to delay his sentencing; and that the government's 21 U.S.C. § 851 information was a nullity, abandoned and defective. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On October 9, 1991, a twenty-seven count indictment was filed in the district court charging Dusenbery, who was incarcerated in a federal prison, with a continuing criminal enterprise ("CCE"), conspiracy, and eight counts of using a communication facility. The conspiracy included his mother and numerous other transporters and distributors. The government alleged that the object of the conspiracy was to distribute at least thirty-two kilograms of cocaine hydrochloride.

On the day Dusenbery's trial was to begin, he entered into a plea agreement with the government and agreed to plead guilty to the CCE count. Shortly thereafter, Dusenbery attempted to withdraw his plea, claiming that he did not understand the nature of the elements of the offense. The district court denied his request and sentenced him to 324 months in prison. Pursuant to the terms of the plea agree-

ment, at the time of sentencing the remaining counts of the indictment were dismissed. On appeal, this court found that Dusenbery should have been allowed to withdraw his plea, and his conviction was vacated. *United States v. Dusenbery,* No. 92–3791, 7 F.3d 235 (6th Cir. Oct.4, 1993).

In 1994, on remand, Dusenbery was tried and found guilty of both the CCE and conspiracy counts. The communication counts were dismissed before trial. The government's proof at trial was that Dusenbery was a leader of a conspiracy that transported cocaine from Florida and distributed it in the Akron, Ohio, area. The uncontroverted testimony of Dusenbery's co-conspirators was that the conspiracy was responsible for multiple kilograms of cocaine during the duration of the conspiracy. Further, a government expert reviewed the notebooks Dusenbery's mother kept regarding the drug transactions and conservatively estimated that at least thirty-two kilograms of cocaine were distributed by the conspiracy.

At the close of the government's proof, Dusenbery moved for a dismissal of the conspiracy count, arguing that it had not been reinstated after remand, so the district court did not have subject matter jurisdiction to try him on that count. The motion was denied, the counts were merged.[1] and Dusenbery was sentenced to 480 months in prison on the CCE count. On appeal. Dusenbery raised the issue of the court's subject matter jurisdiction to try him on the conspiracy count. This court found that any defects in the indictment must have been raised prior to trial and sustained the convictions and sentence. *United States v. Dusenbery,* No. 94–3804, 1996 WL 306517, at *5 (6th Cir. June 6, 1996).

---

1. Under Sixth Circuit precedent, continuous criminal enterprise and conspiracy charges are not subject to double punishment. *See*

*United States v. Davis,* 809 F.2d 1194, 1204 (6th Cir.1987).

Some years later, on a successive § 2255 petition, the district court overturned Dusenbery's CCE conviction. Thereafter, the government moved to reinstate the conspiracy conviction as well as to retry Dusenbery on the CCE count. The district court granted the government's motion. Dusenbery then requested that the retrial of the CCE count be delayed until after sentencing on the conspiracy count. Based on the amount of cocaine involved in the conspiracy and Dusenbery's criminal history, he was sentenced to life in prison.

## II. ANALYSIS

### A. Subject Matter Jurisdiction Over the Conspiracy Count

█ The defendant's first issue is whether the district court had subject matter jurisdiction to try and sentence him on the conspiracy count of the indictment. He argues that the conspiracy count was dismissed pursuant to the terms of his plea agreement at the time he was sentenced on the CCE count and, unless it was reinstated, the district court lacked subject matter jurisdiction to try and sentence him on that count. The government argues that the issue was decided in the defendant's earlier appeal, so the law of the case applies. Challenges to the sufficiency of the indictment are reviewed *de novo. See United States v. Davis*, 306 F.3d 398, 411 (6th Cir.2002), *cert. denied*, 537 U.S. 1208, 123 S.Ct. 1290, 154 L.Ed.2d 1054 (2003).

In 1994, on direct appeal to this court, the defendant made the exact same argument. In his earlier brief he argued: "The conspiracy charge, count two, was dismissed on July 27, 1992, and was not reinstated. Appellant was not reindicted nor was he rearraigned on this count. Because of the above, the district court was without subject matter jurisdiction as to count two, the conspiracy charge." In addressing this argument, we ruled:

Mr. Dusenbery also argues that the conspiracy conviction was improper because of a defect in the indictment. He points out that when he pleaded guilty to the continuing criminal enterprise charge, the government agreed to dismiss the conspiracy count. After he withdrew his guilty plea, the government did not move to reinstate the conspiracy count. Defects in the indictment, however, must be raised prior to trial. The alleged defect in the indictment is irrelevant, moreover, because the conspiracy charge was ultimately dismissed.

*United States v. Dusenbery*, No. 94–3804, 1996 WL 306517, at *5 (6th Cir. June 6, 1996) (citations omitted). In spite of this court's prior ruling on this issue, the defendant argues that the law of the case should not apply because we considered his issue a "defect in the indictment," not "subject matter jurisdiction," so his issue was not addressed in this court's earlier opinion. We disagree and find that the law of the case applies to this issue because the government's failure to reindict and rearraign the defendant on the dismissed conspiracy count was a defect in the indictment that did not implicate the district court's subject matter jurisdiction.

In *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), the United States Supreme Court discussed a federal court's subject matter jurisdiction in the context of a criminal case. The issue in *Cotton* was whether the omission of a fact (drug quantity) from an indictment was a jurisdictional defect requiring the defendants' sentences to be vacated. The Court stated that "jurisdiction" means the court's statutory or constitutional power to adjudicate a case, and it can never be waived or forfeited. *Id.* at 630. In contrast, other defects, such as the right to a grand jury indictment, can be waived. Ac-

cordingly, if the alleged defect in the indictment can be waived, the court is not deprived of its jurisdiction to adjudicate a case. *Id.* at 631; *see also United States v. Williams,* 341 U.S. 58, 66, 71 S.Ct. 595, 95 L.Ed. 747 (1951) (holding that a defective indictment does not affect the jurisdiction of the trial court).

Thus, as *Cotton* teaches, any defect in the indictment or procedure that may be waived is not a "jurisdictional" defect. As to the defendant's argument in this case, both his "jurisdictional" defects—the right to an indictment, or reindictment, and to an arraignment—may be waived. Rule 7(b) of the Federal Rules of Criminal Procedure specifically provides for waiver of indictment. *See also Cotton,* 535 U.S. at 630. Likewise, a defendant's right to an arraignment may be waived, and the waiver will be implied if the defendant proceeds to trial without objection. *Garland v. Washington,* 232 U.S. 642, 646–47, 34 S.Ct. 456, 58 L.Ed. 772 (1914) (finding that lack of formal arraignment did not deprive the accused of any substantial right). Therefore, our prior ruling that these defects had to be raised prior to trial, not at the end of the government's proof, is the law of the case.

The defendant's reliance on *United States v. Bounds,* 985 F.2d 188 (5th Cir. 1993), is misplaced. The facts in *Bounds* are nearly identical to the facts in this case, except that Bounds was arraigned on the dismissed counts before trial. *Id.* at 191. The Fifth Circuit held that the government's failure to reindict or reinstate the dismissed charges was harmless error because Bounds knew the government intended to try him on the dismissed counts. *Id.* at 192. The court recognized that the government ordinarily should reindict or reinstate dismissed charges, but where Bounds could not show how he was prejudiced by the government's mistake, the

error was harmless. *Id.* at 191–92. Likewise, Dusenbery knew the government intended to try him on the CCE and conspiracy counts based on the government's bill of particulars filed before trial.

## B. Sentencing Issues

### 1. *Apprendi* Error

■ The defendant asserts that it was error under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). to sentence him to life in prison based on an amount of cocaine determined by the district court rather than a jury. He asserts that the district court erred in finding that the *Apprendi* error was harmless, but even under the harmless error standard, he argues that he should have been sentenced under the default provisions of 21 U.S.C. § 841(b)(1)(C) because he vigorously contested the amounts of cocaine at sentencing. In opposition to this assertion, the government contends that the district court correctly used a plain error analysis when it found that there was no interpretation of the evidence under which the jury could have found the defendant guilty of conspiring to distribute less than five kilograms of cocaine.

The district court used the plain error standard when considering the amount of cocaine to attribute to the defendant because the defendant had not raised the issue of cocaine quantity at trial. The defendant, however, raised a vigorous objection to the cocaine quantity at the time of sentencing, thus preserving the issue for appeal. A defendant's "objection at the sentencing hearing to the quantity of drugs and the judge's determination by a preponderance of the evidence is sufficient to entitle the defendant to a de novo review." *United States v. Darwich,* 337 F.3d 645, 656 (6th Cir.2003). Nevertheless, an *Apprendi* error is subject to a harmless error analysis. *See, e.g., United States v.*

*Stafford*, 258 F.3d 465, 477 (6th Cir.2001). Our review of the appellate record convinces us that the any error in failing to charge the jury specifically on the issue of the quantity of cocaine was harmless.

"Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed.R.Crim.P. 52(a). The test for whether an error is harmless is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder v. United States*, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). In other words, the issue is whether a rational jury could find the defendant guilty absent the error. *United States v. King*, 272 F.3d 366, 378 (6th Cir.2001), *cert. denied*, 535 U.S. 1119, 122 S.Ct. 2344, 153 L.Ed.2d 172 (2002).

In 2000, the Supreme Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. We have determined that the *Apprendi* protections apply to the amounts of drugs that trigger the statutory progression of increased penalties. *See Darwich*, 337 F.3d at 654; *see also United States v. Strayhorn*, 250 F.3d 462, 467–68 (6th Cir.2001). In this case, the defendant was sentenced to life in prison under 21 U.S.C. § 841(b)(1)(B) because he had two prior convictions for drug felonies, and the district court found that he was involved in a conspiracy to distribute more than five kilograms of cocaine. The amount of cocaine attributed to him increased his penalty from a maximum of thirty years (21 U.S.C. § 841(b)(1)(C)) to life in prison without release.

The district court questioned whether there was even an *Apprendi* error in this case. The indictment alleges that the object of the conspiracy was to purchase and distribute approximately thirty-two kilograms of cocaine. The district judge noted that the indictment and the allegation about the amount of cocaine were read to the jury, and the jury was told "more than once" that it had to find the defendant was guilty of the specific conspiracy outlined in the indictment or find him not guilty at all.[2] Further, the sentencing judge read the trial transcripts and was aware that the government's contention, from opening argument to closing argument, was that the conspiracy involved thirty-two kilograms of cocaine. These circumstances led the district judge to conclude that there was no *Apprendi* error because the amount of cocaine was stated in the indictment and submitted to the jury. We need not reach this issue because we agree with the district judge that even if there was an *Apprendi* error, it was harmless.

At trial, the government presented witnesses who testified about the organization and operation of the conspiracy. Gus Kloszewski, a fellow inmate, testified that he and the defendant organized the conspiracy from the federal prison at Ashland, Kentucky. Kloszewski and his associates transported the cocaine from Florida, and the defendant and his associates, including his mother and girlfriend, distributed it in the Akron, Ohio, area. Kloszewski testified that at the beginning of the conspiracy, his associates delivered one to three

---

2. The Honorable Sam H. Bell was the trial judge in 1994, but he retired before the defendant was sentenced on the conspiracy charge. The Honorable Kathleen O'Malley presided over the sentencing hearing.

kilograms of cocaine to the defendant's associates on at least a monthly basis.

Jackie Esselburn testified that she traveled to Florida on at least one occasion, bringing back one or two kilograms of cocaine for the defendant. She also recalled that another member of the conspiracy asked her to hold three kilograms of cocaine for him. She also testified that Pete DiBona went to Florida at least five times in 1987 to pick up cocaine and returned with two kilograms each time. The cocaine was divided, and she distributed one of the kilograms of cocaine for the defendant each time Pete returned. The defendant's mother, Mary Dusenbery, provided the money for the purchase of the cocaine. Mary kept notebooks detailing the transactions, including the money that Jackie paid to her after the sale of the cocaine. An expert examined the notebooks and made a conservative estimate, given the amount of money going to and from Mary, that the conspiracy was responsible for approximately thirty-two kilograms of cocaine.

Marcia Kuntswiller, Gus Kloszewski's girlfriend, testified that she went to Florida more than twelve times to pick up cocaine for Bill Kloszewski (Gus's brother) until her arrest in Florida in 1988. Thereafter, she was asked to take on a more important role, and she personally dealt with the Florida distributors and delivered the cocaine to Ohio. She specifically testified to delivering two kilograms of cocaine to Jackie at the Arborgate Hotel. She began delivering the cocaine to Theresa Franjesh, the defendant's girlfriend, in 1990, including a two-kilo deal. Four or five separate times she also delivered one to two kilograms of cocaine to Atlanta, Georgia, and made at least one delivery of cocaine to Lexington, Kentucky.

At sentencing, for the first time, the defendant challenged the government's evidence on the amount of cocaine. To explain why none of the government's witnesses were challenged at trial, he contended that he and his trial counsel did not know or understand in 1994 that the quantity of cocaine would become such an issue. This argument is refuted by the fact that the government filed its § 851 enhancement information prior to the trial, so the defendant and his counsel were well aware that the quantity of cocaine was important and, if the government proved over five kilograms of cocaine, he was facing life in prison. In any event, at sentencing he proffered the testimony of Mary Dusenbery that the information in her notebooks was only evidence of her own cocaine conspiracy and had nothing to do with him. Also, he argued that all the other co-conspirators had their own money and cocaine distribution deals, again, unrelated to him. He also asserted that the testimony of Jackie Esselburn and Marcia Kuntswiller was not definitive enough in that they only estimated the number of trips and the amounts of cocaine. Finally, he argued that the trial witnesses credibility was highly questionable.

In lieu of his own testimony, the defendant submitted his statement made to FBI agents in 1992 in connection with his guilty plea. In that statement, which he claims was partly fabricated by the FBI agent, he admits that the first cocaine deal with Pete DiBona involved three to four kilograms of cocaine and that there were other trips to Florida financed by Mary Dusenbery for the purpose of purchasing cocaine to be distributed in Ohio. He also described a two-kilogram deal between Terry Franjesh and Marcia Kuntswiller. Thus, by his own statements the conspiracy involved, at a minimum, five or six kilograms in addition to the other cocaine brought back from Florida.

We agree with the district court's finding that the evidence at trial was overwhelming, that the conspiracy distributed more than five kilograms of cocaine, and that any alleged *Apprendi* error was harmless. No reasonable jury could have found that the conspiracy involved less than five kilograms of cocaine or that the defendant was not one of the leaders of the conspiracy, albeit from federal prison. Therefore, because the evidence was sufficient to support a finding of five kilograms or more of cocaine, the defendant was properly sentenced to life in prison without release.

### 2. Defendant's Right to Testify at Sentencing Hearing

■ Upon motion of the defendant, the district court scheduled the sentencing on the conspiracy count before the retrial of the CCE count. At the sentencing hearing, the defendant took the stand to testify about the amounts of cocaine. He was warned about incriminating himself given the pending CCE charge. The court recessed the sentencing hearing to allow the defendant time to consider his options. The next day, the defendant asked the court to delay the sentencing until the CCE retrial was concluded. The district court denied his request, and the defendant instead chose to offer his testimony by way of a proffer.

The defendant contends that the district court erred in refusing to delay his sentencing on the conspiracy count until after his retrial on the CCE count. Because the district court would not delay his sentencing, he argues that he was forced to choose between his Sixth Amendment right to testify on his own behalf and his Fifth Amendment right not to incriminate himself. In response, the government argues that the defendant waived his rights by not objecting to his counsel's announcement to

the court that the defendant would not testify. The government contends that the defendant made the strategic decision not to testify, so he cannot raise the issue on appeal.

Contrary to the government's position, the issue is not whether the defendant waived his rights, but rather, whether the district court erred in refusing to delay his sentencing so that he did not have to waive either his Fifth or Sixth Amendment rights. We find that the district court's refusal to delay the defendant's sentencing was harmless under the circumstances. The sentencing on the conspiracy count was scheduled prior to the retrial on the CCE count at the defendant's request. He knew then that he intended to raise an *Apprendi* challenge to the drug amounts since he had raised the issue in his sentencing memoranda. When the defendant determined that it was not in his best interest to testify, the district court allowed the defendant to submit a proffer. The proffer was considered, but the court determined that the evidence at trial sufficiently supported a finding that the defendant conspired to distribute more than five kilograms of cocaine. The district court did not err in refusing to further delay the defendant's sentencing.

### 3. Government's § 851 Information

■ In 1994, pursuant to 21 U.S.C. § 851(a), the government timely filed an information setting out the defendant's prior convictions upon which it intended to rely when seeking an enhanced sentence. Sentencing issues related to the sentencing guidelines, particularly the use of prior convictions to enhance a defendant's sentence, are given a deferential review. *See Buford v. United States*, 532 U.S. 59, 64, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001).

The defendant argues that since the information was not used in 1994 to sentence

him to life in prison (he was sentenced on the CCE count instead), the information was "abandoned" by the government. The information was never withdrawn, however, and the government had a right to insist that it be used to enhance the defendant's sentence on the conspiracy charge. The defendant's reliance on *United States v. Rogers*, 228 F.3d 1318 (11th Cir.2000), *abrogated by United States v. Sanchez*, 269 F.3d 1250 (11th Cir.2001) (*en banc*), is misplaced. In *Rogers*, the government filed a § 851 information, but the prior convictions were not used by the court to enhance the defendant's sentence. On appeal, the court held that the government did not object to the failure to enhance the defendant's sentence at the time of sentencing, nor did it cross-appeal, so the enhancement did not apply. *Id.* at 1329. This is not the situation here. When the appropriate time came, at the defendant's sentencing for conspiracy, the government's information was used properly to enhance the defendant's sentence.

■ Next, the defendant argues that the United States Attorney did not personally sign the § 851 information, so it is a nullity. This argument is without merit. The statute does not require that the United States Attorney personally sign the document. *See United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir.2000). In fact, the power to file § 851 notices has been delegated to Assistant United States Attorneys. *See United States Attorney's Manual* § 9–27.300 (a prosecutor must file an enhancement information if the convictions are provable). "Moreover, an information signed by an Assistant United States Attorney is adequate for the purpose of 21 U.S.C. § 851(a)(1), which is to ensure that a defendant has notice that the government seeks an enhanced sentence based on prior convictions." *Hawthorne*,

at 404. The § 851 enhancement information was not a nullity.

Related to this argument is the defendant's allegation in his brief that the Assistant United States Attorney in this case "has engaged in vindictive sentencing and prosecution based on Appellant enforcing his constitutional rights." The defendant alleges that if the United States Attorney personally had signed and filed the enhancement, then he might have been spared his successively increased sentences. The issue of vindictiveness was raised at the time of sentencing, and the defendant and his counsel admitted that there was no vindictiveness involved in this case. Furthermore, the record supports this conclusion. At each step, the government did not seek the longest sentence it could, but instead agreed to the lesser.

Finally, the defendant argues that the § 851 information should not apply because he was not prosecuted by a valid indictment as required by 21 U.S.C. § 851(a)(2). That section requires that a § 851 enhancement notice may not be filed unless the defendant is prosecuted by an indictment rather than an information if the enhancement would be for more than three years. We have already found that the defendant was prosecuted and sentenced by indictment, so this argument is without merit.

## III. CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.